## Jimison *versus* Reifsneider.

1. The question of excessive distress is irrelevant in an action of replevin for the goods distrained. If, in fact, the distress be excessive, the proper remedy is by an action on the case.

2. A sub-lessee whose immediate landlord holds under a lease prohibiting sub-letting, and who has not been recognised in his tenancy by the paramount landlord, no matter whether his rent to his immediate landlord be in arrear or not, has no right in case of distraint by the paramount landlord upon the chattels on the demised premises for rent due him, to demand that the goods of his immediate landlord be first distrained upon and sold, and that resort be had to his goods only in case the proceeds of the former sale prove insufficient.

3. When in such case the goods of both the sub-lessee and his immediate landlord are distrained upon, and the sub-lessee institutes replevin for his property and gives the usual bond, and afterwards the paramount landlord, relying upon the security of that bond, stays proceedings against the other goods distrained : *Held,* that by said last-named act the paramount landlord had not precluded himself from proceeding further against the goods which had been replevied.

January 25th and 26th 1881.    Before SHARSWOOD, C. J., MER-
CUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of July Term 1880, No. 115.

Replevin, by J. P. Reifsneider against Powers & Weightman and James K. Jimison. The sheriff returned *nihil habent* as to Powers & Weightman. The *narr.* alleged the taking and detention of the plaintiff's goods on the demised premises. The defendant Jimison filed his cognisance, acknowledging the taking by him, as bailiff of Powers & Weightman, of the plaintiff's goods, on the demised premises, as a distress for rent then due and in arrears to Powers & Weightman by their tenants of the said premises, Hall & Richardson. The plaintiff filed three pleas. The first denied that Jimison was the bailiff of Powers & Weightman, and tendered issue. The second denied that any part of the rent mentioned in the cognisance was due and in arrears from Hall & Richardson, the lessees, to Powers & Weightman, and tendered issue.

The third plea averred that at the same time the plaintiff's goods were distrained the defendants also levied on the goods of Hall & Richardson, the lessees of Powers & Weightman, which were more than sufficient in value to pay the said rent; yet the defendants released and discharged the goods of Hall & Richardson from all liability for said rent, although requested by the plaintiff to proceed, in the first instance, to make the rent out of the goods of Hall & Richardson, which they refused to do.

The defendant, in his replication to the said third plea, traversed the alleged release and discharge of the goods of Hall & Richard

[Jimison *v.* Reifsneider.]

son from the said distress for the said rent so due and in arrears to Powers & Weightman, as in the said third plea set forth.

On the trial, before HARE, P. J., the evidence showed the following facts: On April 1st 1868, Powers & Weightman, by lease under seal, demised a factory with steam-engines, boilers, machinery and fixtures, in the city of Philadelphia, to Hall & Richardson, for the term of one year from May 1st 1868, at a yearly rent of $2400, payable quarterly. Hall & Richardson went into possession under this lease, and have remained in possession ever since. The lease contained a clause prohibiting subletting by Hall & Richardson, in violation of which, they sublet a part of the premises in 1868 to the plaintiff Reifsneider, at the rent of $1000 a year. On April 1st 1878, Hall & Richardson were in arrear for rent of said premises, $675, and on the 20th April, Powers & Weightman gave a warrant to their bailiff, James K. Jimison, to collect the same, by virtue of which he made a distress upon all the goods and chattels found upon the demised premises. Jimison testified that he knew nothing about the ownership of the goods levied on. Reifsneider testified that the levy covered about $5000 worth of Hall & Richardson's goods, and about $3000 worth of his own; that he requested the bailiff, and Mr. Weightman personally, to proceed, in the first instance, under their distraint to make their rent out of the goods of Hall & Richardson, and that, if these should prove not sufficient, they could then sell his goods. This they declined to do. Reifsneider thereupon entered security in the sum of $4000, and issued his replevin, under which his goods were replevied and delivered to him. The landlords, relying upon the security of the replevin-bond entered by Reifsneider, thereupon instructed the bailiff to stop proceedings against Hall & Richardson, and the latter resumed possession of their goods.

The defendants presented the following points:

The court is requested to charge: 1. That on April 1st 1878, Hall & Richardson, lessees, being indebted to their landlords, Powers & Weightman, in the sum of $675 for rent of the demised premises, and then in arrear, they had the right, by their bailiff, the defendant, to distrain on the goods and property of the plaintiff Reifsneider, described in the writ of replevin, at that time found on the demised premises, in satisfaction of the said rent so in arrears.

2. That even if there were *other* goods and property on the demised premises at the time of the said distress, not embraced in the present replevin, *sufficient in value* to satisfy the said rent then in arrears, still the plaintiff's said goods found on the demised premises at the time of the said distress were liable for the said rent, and the said distress thereupon was proper and lawful.

The court declined to charge as requested, and instructed the jury " to find for the defendant on the issues joined on the first

and second pleas; and the court leaves the issue joined on the replication to the third plea to the avowry (cognisance) to the jury on the evidence."

Under these instructions, the jury found for the defendant on the issues joined on the first and second pleas, assessing the rent in arrears at $755, and finding the value of the goods distrained $2000. On the issue joined on the replication to the third plea, the jury found for the plaintiff.

Upon a motion in arrest of judgment, and to enter judgment for the defendant on the whole record, notwithstanding the verdict for plaintiff on the replication to the third plea, the court, HARE, P. J., filed the following opinion:

" The question presented by the record is, can a stranger to the lease, whose property had been taken under a distress made for the rent, require that the constable shall not offer his goods for sale until the tenant's goods have been sold and found insufficient to pay the debt? I state this as the question, because an under-tenant owes nothing to the landlord, and can claim no more from him than a stranger whose goods are accidentally on the premises at the time of the levy. The legal right of the landlord is absolute, and the point to be determined is, whether he should so exercise it as not to sacrifice the stranger's property unless such a course is requisite for his own protection. It is well settled under the authorities that a creditor should not be delayed or hindered in the use of any remedy for the satisfaction of the debt, even when the effect of refusing the injunction will be to throw the burden on one who, like a surety, is not primiarily or ultimately liable, and thus give rise to a circuity of action, but it not less clear that when the fund or property in question is within the grasp of the law, and the question is merely as to the order in which it should be sold or appropriated, a chancellor may well direct that the principal debtor's goods shall be the first brought to the hammer, and the execution stayed if they produce enough to satisfy the claim. If such be the rule, it applies emphatically in the present instance, where the plaintiff's modest demand was not for the delay or omission of any step requisite to make the distress effectual, but that the landlord should, out of the whole mass of goods levied on, select those which belonged to the tenant, and dispose of them before proceeding to sell the plaintiff's goods for a debt which he did not owe.

" We have arrived at this conclusion with some diffidence, because the case appears to be one of the first impression, and we do not desire to complicate or embarrass a remedy which is not less valuable to the tenant by enabling him to obtain credit, than to the landlord as a security for the rent; but we do not perceive that any inconvenience can arise from requiring that when the goods of a tenant and of an under-lessee or stranger

[Jimison *v.* Reifsneider.]

have both been distrained for rent arrear, the tenant's shall be first sold, as being the party who is really answerable.

"The landlord need not postpone the distress, the appraisement or the sale for an hour, nor is it incumbent on him to inquire whether the goods which the stranger or under-tenant claims as his do or do not belong to him. The only restriction imposed is, that the goods which are not so claimed shall be offered for sale in the first instance, and so much only of the residue disposed of as may be requisite to satisfy the arrears and costs.

"The plaintiff's equity is stronger in the present instance, because it appears, from the pleadings and verdict, that he had paid his rent to Hall & Richardson, which, as KENNEDY, J., intimated in Quinn *v.* Wallace, 6 Whart. 452, 457, might well exempt his property from liability for the rent due from them, when the lessors actually held a sufficient amount of their property to pay the amount in full.

"The motion for judgment *non obstante veredicto* is dismissed, and judgment entered for the plaintiff on the verdict found for him on the issue joined on the replication to the third plea."

The defendant took this writ of error, assigning for error the refusal of the court to charge as requested in defendant's points, and the entry of judgment for the plaintiff on the verdict under the issue on the replication to the third plea.

*William Ernst* (with whom was *R. J. C. Walker*), for the plaintiff in error.—Goods found on demised premises are subject to distress for rent in arrear, whether they belong to the tenant, a sub-tenant, or to a stranger. A sub-tenant who has entered in violation of a clause in a lease prohibiting sub-letting, has no equity to demand that the landlord shall investigate the question of ownership of goods distrained upon, and exempt the sub-tenant's goods, until he has exhausted the tenant's goods. Whether the sub-tenant owed any rent or not to the tenant is an immaterial matter, and will not avail him against the claim of the paramount landlord: Murphy *v.* Borland, 37 Leg. Int. 94; Blanche *v.* Bradford, 2 Wright 344; Rosenberger *v.* Hallowell, 11 Casey 369.

*S. N. Rich,* for the defendant in error.—We do not dispute the rule of the common law that goods of a stranger, found on the demised premises, are liable to distress for rent. But under the equitable principles incorporated in the law of Pennsylvania they are to be considered in the light of surety in case the goods of the tenant prove insufficient. And if a landlord, having in his hands the means of satisfaction of his debt, by a prior levy on the tenant's goods, releases or abandons such levy, his surety is discharged: Commonwealth *v.* Miller, 8 S. & R. 452; Cathcart's Appeal, 1

Harris 416; Quinn *v.* Wallace, 6 Whart. 452; Karns *v.* McKinney, 24 P. F. Smith 387. It is no answer to say that the under-tenant has his remedy over against the tenant by an action on the case. The law abominates circuity of action, and the landlord, having found sufficient goods of the tenant, has no right thus to harass the stranger or sub-tenant. The court below properly held that, under the facts, the rigor of the common-law rule should be mitigated by construing the sub-tenant's goods as security.

Mr. Justice MERCUR delivered the opinion of the court, May 2d 1881.

This complaint is against the plaintiff in error, as bailiff of Powers & Weightman. As such he distrained, for the non-payment of rent, goods on the premises demised by them to Hall & Richardson. The warrant issued, and the distress was made on the 20th of April 1878.

That rent was then due and unpaid is found as a fact. That the goods of the defendant in error found thereon were liable to distress for the rent, cannot, under numerous authorities, be questioned: Karns *v.* McKinney, 24 P. F. Smith 387.

What, then, is the grievance of which the defendant in error complained, and which he sought to redress in this action? Without the consent of Powers & Weightman, he appears to have leased a portion of the demised premises of Hall & Richardson. Claiming the latter had goods on the premises of sufficient value to satisfy the rent, he demanded of Powers & Weightman that they should release his goods and first proceed against the goods of Hall & Richardson. He also requested the bailiff to proceed first against their goods. On their declining so to do, he, on the second day after the distress, brought this action of replevin for his goods, and gave bail to the sheriff. The latter made return that he had replevied as commanded; had duly summoned Jimison on the 24th of April 1878, and delivered the property to Reifsneider, and *nihil habent* as to the other defendants.

The plaintiff in error made cognisance. The first plea thereto denied that he was bailiff, and the second that there was any rent in arrear. On both these pleas the jury found for the plaintiff in error. The third plea averred that, at the time of taking the goods of defendant in error, the bailiff also took, in the same distress, goods of Hall & Richardson, of value more than sufficient to satisfy the rent, and afterwards, to wit, on the 23d of April 1878, that said Powers & Weightman and said Jimison did release and discharge said last goods from said distraint, knowing the goods in said cognisance mentioned belonged to defendant in error. The replication denied all such release and discharge of said goods. Issue was joined on the pleas, and on this third plea the jury found

[Jimison *v.* Reifsneider.]

in favor of the defendant in error. They also found the property distrained was of much greater value than the rent in arrear. The court considered the distress excessive. It appears to have assumed that fact to be fatal to the right of the landlord to distrain, and thereupon entered judgment against the plaintiff in error.

The question of excessive distress was irrelevant in the action of replevin, and the evidence thereof inadmissible: Karns *v.* McKinney, *supra.* If, in fact, the distress was excessive, the proper remedy is by action on the case, founded on the Statute of Marlbridge: 3 Black. Com. 12; Roberts's Dig. 177; McKinney *v.* Reader, 6 Watts 41; Karns *v.* McKinney, *supra.*

All the facts necessary to give a right to distrain existed. It was exercised by making one distress on property found on the premises, a portion of which belonged to the under-tenant. One complaint now is, a refusal within two days after distress made, to release and discharge his goods from the distraint, or at least to agree to sell first the goods of Hall & Richardson; the other is that the said last goods were released and discharged from the levy. The evidence sustains the fact averred in the first complaint. No authority was cited showing such release to be demandable of right. None that it was error to refuse. The uncontradicted evidence is, that the bailiff made but one distress, and did not at that time know anything about the ownership of the goods distrained. There is no evidence that any of the goods of Hall & Richardson were released and discharged from the levy before the writ of replevin was executed. After its execution, the landlords told their bailiff to stop proceedings. Thereupon he did nothing further, but let them have them, and, as we have shown, the sheriff delivered the others to the defendant in error. This action was not for detaining the goods of the defendant in error after they were replevied, but for refusing to release them before they were replevied. There was really no evidence in support of the third plea to submit to the jury. But having been found they were insufficient, in law, to support the judgment, it was assumed by the learned judge that the defendant in error had paid his rent to Hall & Richardson. A careful examination fails to find any such averment in the pleadings, or in the evidence on the trial; nor is it found in the verdict as set forth in the paper-book. If, however, such was the fact, it in no wise changed the right of Powers & Weightman to distrain his goods. He was not their immediate tenant; they had not recognised his tenancy. He had not paid them, nor by their authority paid to any other person: Quinn *v.* Wallace, 6 Whart. 452. When his writ of replevin was executed, he gave security which was satisfactory to Powers & Weightman. The goods of the plaintiff in the writ were taken out of their hands. They had a right to rely on that security. They were precluded from then proceeding further

Jimison *v.* Reifsneider.]

against the goods thus replevied, and had an undoubted right to stay proceedings against the other goods distrained. In so doing, after the writ of replevin was executed, they did not in the least render invalid any act of theirs prior to its execution, which was valid when performed.

The court therefore erred in not entering judgment in favor of. the defendant below, on the whole record, notwithstanding the verdict on the third plea. This view of the case makes any more specific answers to the assignments unnecessary.

Judgment reversed, and judgment in favor of the plaintiff in error, *non obstante veredicto.*